Pierce, relator, *vs.* Beck, County School Commissioner, *et al.*, respondents.

61   413
123   865

[Warner, Chief Justice, was providentially prevented from presiding in this case.]

1. Where, in 1876, local trustees chosen by the teacher and his patrons (conformably to a system established by the county board of education) dismissed the teacher for cruel treatment to pupils, and thereupon the matter was brought by the teacher before the board, who, after hearing evidence on both sides, approved the action of the trustees and passed an order, not revoking his license, but suspending him indefinitely as a teacher at that particular place, the decision of the board was upon a matter of "local controversy in reference to the construction or administration of the school law," and not being appealed from, was binding upon all the parties. Code, §1259.

2. For teaching done in defiance of such decision, and pending a possession of the school-house acquired by force, no right whatever accrued to compensation out of the public school fund.

Judgments. Schools. Before Judge Lester. Lumpkin Superior Court. April Term, 1878.

To the facts stated in the first head-note, it is only necessary to add that Pierce applied for a *mandamus* against the county school commissioner and the board of education of Lumpkin county, requiring them to audit his account for

teaching and to pay him his *pro rata* out of the public school fund.

The writ was refused, and the relator excepted.

MARLER & PRYER; J. N. DORSEY, for plaintiff in error, cited Code, §§1257, 1261, 1262, 1263, 1265; 59 *Ga.*, 318; acts of 1877, p. 118.

W. P. PRICE, for defendants, cited Code, §§1258, 1259, 1263.

BLECKLEY, Justice.

It appears from the record, that as far back as the year 1873, the county board of education in and for Lumpkin county, going beyond the letter of the public school law as it then stood, established a system of local trustees in each school district of the county. Under this system two trustees were chosen by the patrons and one by the teacher, and these three had the immediate superintendence of the school. The system was continued in force up to, and including, the year 1876. In this last year, the trustees for one of the school districts investigated some alleged misconduct of their teacher, and dismissed him. He complained to the county board of education, and urged them to meet and reverse the action of the trustees. The board met accordingly, heard evidence on both sides, reduced it to writing, and had it recorded in their book of minutes. The evidence tended to show that the teacher had been guilty of harsh and cruel treatment to more than one of his pupils. The board, finding that the charges were sustained, approved the action of the trustees, and therefore passed an order dismissing him from his position as teacher of that particular school. Being willing that he should find employment, if he could, in some other locality, they did not attempt to revoke his license. The house in which he had taught was immediately closed by the trustees, and it remained closed about three weeks. After this interval the teacher, with

the consent of less than a majority of his patrons, and without the consent of the trustees, "violently, forcibly and illegally" took possession of the house, first having gone through the form of appointing three other trustees. He then taught out the remainder of his original term of three months. His compensation out of the public school fund, *pro rata* with other teachers, for teaching done after this violent entry, is the pecuniary subject matter of the present litigation. His right to be paid what he had earned up to the time of his dismissal, was expressly recognized by the board when the order of dismissal was passed, and has not since been controverted. He claims to be paid just as if there had been no interruption in the progress of his school, and no adverse decision on his right to teach at that place.

1. The act of 1872 (Code, §1259) declares that "the county board of education shall constitute a tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of the school law, with power to summon witnesses and take testimony, if necessary; and when they have made a decision, said decision shall be binding upon the parties to the controversy : *provided*, that either of the parties shall have the right to appeal to the state school commissioner, and said appeal shall be made through the county commissioner in writing, and shall distinctly set forth the question in dispute, the decision of the county board, and the testimony as agreed upon by the parties to the controversy, or if they fail to agree upon the testimony, as reported by the commissioner." The case before us is one in which the teacher himself carried the controversy before the county board of education, and had it determined. As the decision was against him he might have taken an appeal to the state school commissioner, but this he did not think proper to do. The controversy was undoubtedly local—confined to the one district and the one school; and that it involved both the construction and administration of the school law, is hardly less doubtful. It presented two questions : first,

Pierce, relator, *vs.* Beck, County School Commissioner, *et al.*, respondents.

whether the teacher was guilty of the alleged misconduct? and, secondly, whether, if he was, he should be dismissed? The trustees, after investigation, took the affirmative of both these questions; and, moreover, whether rightfully or wrongfully, they treated themselves as competent to dismiss him, and acted accordingly. At the instance of the teacher, and with notice to the trustees as the adverse party, the controversy in all its branches was re-opened and re-examined before the county board, and that board, besides approving the action of the trustees, strengthened it, so far as they could, by themselves passing an order of dismissal. Now, let it be conceded that the board erred, what was the teacher's remedy? It was an appeal to the state school commissioner. But as he took no appeal, he was concluded. To reach this result, it is not necessary to hold that the scheme, in which the teacher as well as the board co-operated, of having local trustees, was within the purview of the public school law, as the law stood prior to the act of 1877. So far as this question is now involved, it was incidental to the main controversy, and would have been passed upon by the state school commissioner if an appeal to him from the decision of the board had been prosecuted. The teacher helped to bring the trustees into existence, then got into a dispute with them, then referred that dispute to the county board, and finally, without carrying his case further, determined to stand out against the decision of both the trustees and the board. Had he taken no part in appointing the trustees, had they been mere usurpers, and had the board been only a board of arbitration, yet his own voluntary reference of the dispute to the board, and their investigation of it at his request, ought to entitle the decision which they rendered to at least the weight of an award by arbitrators.

2. By a tribunal of his own seeking the teacher was dismissed, after having been previously dismissed by the trustees. For three weeks he submitted, and then, having strengthened himself for action as best he could, he re-established himself in the house by a violent entry, and re-

sumed teaching. Teach he would, and teach he did, at that place, in defiance of the trustees and of the board. He organized a new cabinet of trustees, and finished his term. What he earned during this period of open insubordination to the authority of the board, the board and the county commissioner refused to recognize as a charge upon the public funds. The court did not err in refusing to constrain them by *mandamus*.

Judgment affirmed.