### HODGES *et al.* v. TALBERT *et al.*

1. While under the provisions of the act approved August 21, 1906 (Acts 1906, p. 61), the same being an act to provide for local taxation for public schools, a county board of education might, after the county was laid off into school districts in accordance with the provisions of that act, alter the boundaries of a district, they do not have the authority to cut off substantial portions of several adjacent districts and out of the portions so cut off establish a new school district.

2. The decision of the county board of education and of the State school commissioner, holding that a new school district had been properly and legally established and that the money arising from the taxation of the residents and taxpayers of a portion of the territory of a school district as originally laid out under the act above referred to could be appropriated to the support of schools in the newly created district, was not binding as an adjudication so as to prevent an appeal to the courts, upon the part of the taxpayers and residents of the portion of the territory so cut off from a district as originally laid out, to prevent a misappropriation of the funds raised by taxation upon their property.

3. While a plea of former adjudication as set forth in this record was filed by the defendants and is insisted upon by the plaintiffs in error here, the record of the former suit in which it is claimed that the questions here raised were determined is not set forth either in the bill of exceptions or in the brief of evidence, nor in any way properly authenticated; and therefore this court can not determine whether such questions have been the subject of former adjudication.

OCTOBER 13, 1910.

Injunction. Before Judge Park. Decatur superior court. December 21, 1909.

*R. G. Hartsfield,* for plaintiffs in error.

*J. D. Talbert* and *Wooten & Hofmayer,* contra.

BECK, J. J. D. Talbert and others, alleging that they were residents and taxpayers of the Brinson school district in Decatur county, filed their equitable petition for injunction against C. S. Hodges and other trustees of the Cyrene school district, and J. W. Butts, tax-collector of said county, and H. V. Griffin, secretary and treasurer of the board of trustees of the Brinson school district. Petitioners alleged that the county board of education established the Cyrene school district out of portions of Bethel, Brinson, and Matthews districts, after having laid off the county into school districts in accordance with the act of the legislature providing for local taxation for public schools, approved August 21, 1906, amendatory of the act approved August 23, 1905, and after a map of the county thus laid off had been filed with the ordinary in accordance with the provisions of law. It is averred, that the action of the board of education in establishing the Cyrene district is illegal, because the act approved August 21, 1906, does not provide for nor authorize the creation of any new school district after a county is once laid off into districts; that the reduction of the Brinson school district in area, after the amount of local taxation had been voted upon by the voters of the district, was unjust and illegal, and the reduction of the area would place a heavier burden of taxation upon the people without their consent. Petitioners prayed, that the tax-collector and the treasurer of the board of trustees of the Brinson school district be enjoined from paying over any of the money raised by local taxation during the current year, in the Brinson school district as originally laid out, to C. S. Hodges and the others who claimed to be trustees of the Cyrene school district; that the money so raised be ordered paid over to the trustees of the Brinson school district and be applied for

the benefit of the public schools of the Brinson district; that the establishment of the Cyrene school district be declared illegal and of no effect; and that the portion of the territory of the Brinson district as originally laid out but now included in the Cyrene district be declared to be still a part of the original district.

The defendants, Hodges and the other trustees of the Cyrene school district, demurred generally and specially to the petition; and in their answer they insisted that the Cyrene school district was legally established and that they constituted the duly elected board of trustees of that district. They further contended that under the pleadings and evidence in the case the legality and propriety of the establishment of the new district was shown. They also filed a plea of former adjudication of the issues raised by the petition; also averred that the petitioners were concluded by the decision of the State board of education, rendered upon appeal from the State school commissioner, who had, upon appeal from the action of the county board, sustained the county board. Upon interlocutory hearing the court below granted the prayer of the petitioners, and passed an order enjoining the tax-collector and the secretary and treasurer named as defendants from paying over to the other defendants, as trustees of the Cyrene school district, the money collected for school purposes from the territory which had originally constituted a part of the Brinson school district; the judgment being based upon the court's opinion that under the local school tax act, known as the McMichael act, a county board of education, after having laid off the county into school districts under the provisions of that act, has no authority to so change the lines of the established districts as to construct a new district.

1. In the act providing for local taxation for public schools, approved August 21, 1906 (Acts 1906, p. 61), it is provided: "That within thirty days after the passage of this act, or as soon thereafter as practicable, it shall be the duty of the county board of education of each county in Georgia to lay off the county into school districts, the lines of which shall be clearly and positively defined by boundaries, such as creeks, public roads, land-lots, district-lines, or county-lines. The school districts thus marked out shall contain an area of not less than sixteen square miles, and, where practicable, shall be so shaped as to have the school build-

ings as near the center as possible, and no territory shall be included whose occupants reside farther than three miles from the schoolhouse without written petition of two thirds of the qualified voters therein; *provided,* that the board of education may have the right to establish districts with areas less than sixteen square miles where there are natural causes or local conditions that make it necessary to do so. The natural causes which will permit the creation of smaller districts are mountains, streams over which there are no bridges, and dangerous roads. Local conditions which will permit the creation of small districts must be determined by the board of education." And in the act it is also provided that "A map of the county thus laid off, plainly outlining the boundaries of the school districts with full description thereof, shall be filed with the ordinary within forty days after the passage of this act, or as soon thereafter as practicable, and the boundaries of said school districts shall not be altered any oftener than two years."

We are of the opinion, after reading the portions of the act known as the McMichael act, quoted above, and from consideration of the entire act, that it was the purpose of the General Assembly in enacting this law to have the boards of education of the various counties of the State to lay off their respective counties into school districts in size not less than sixteen square miles, except where natural conditions required, for the convenience of the respective patrons of the school, a district smaller in area than that, and, when this was done, that the division of the county into districts should have the element of permanency and definiteness; so that when the residents and taxpayers of each district were called upon, in an election held for that purpose, to decide the question as to whether or not they would impose a local tax upon themselves, they could act with a view both to the existing conditions and educational needs of the districts and the corresponding burdens that would be imposed by the tax for which they were voting. But if the board of education of the county could, in their discretion, at any time, cut off from the territory of any other district a substantial portion thereof, which would have the effect of materially lessening the amount of taxable property in the district thus laid off, then a taxpayer voting one day for local taxation at a certain rate could not be certain that the amount of money thus raised would be sufficient to equip and maintain a school adequate

to the needs of the district; and this uncertainty might have the effect of deterring taxpayers and voters from voting for local taxation for school purposes, as they might otherwise do if they could be assured that the school district as originally laid out and established would remain substantially the same as it was at the time of the election held for the purpose of deciding the question of local taxation. The purpose of the act was not only to authorize but to encourage local taxation. But if that construction were put upon the act which the plaintiffs in error insist is the proper construction, such an element of uncertainty as to the amount of funds that could be raised at a given rate of taxation upon the property in a district might deter voters from favoring the scheme for local taxation.

But plaintiffs in error contend that inasmuch as the act which we have under consideration provides that "the general school laws of this State as administered by the county board of education shall be observed," the county board was empowered, under the provisions of the Code of 1895, vol. 1, § 1360, to "lay off new sub-school districts" as the public necessities required. We are of the opinion, however, that so much of this section as provides for the laying off of new school districts is in conflict with the provisions of the act approved August 21, 1906, inasmuch as it would entirely destroy that element of permanency and fixedness in the shape and size of the school districts laid off under the McMichael act, which was an important element of the legislative scheme embraced in that act. While under the act last referred to it was within the authority of the county board of education to alter the boundaries of the school districts as laid off under that act, that authority is not so extensive as to include the right to cut off substantial portions of those school districts for the purpose of making an entirely new district. And we are, therefore, of the opinion that the court below properly construed the act with reference to the question which he had before him.

2. It is contended, that the decision of the board of education of Decatur county, creating the Cyrene school district, which decision was, on appeal from the order of the county board establishing the district, sustained by the State school commissioner, is final and binding, and that petitioners are concluded thereby; that jurisdiction over the matters involved in this case is conferred

by law on the board of education as a tribunal having jurisdiction to decide and settle the question involved. The Code of 1895, vol. 1, § 1364, provides: "The county board of education shall constitute a tribunal for hearing and determining any matters of local controversy in reference to the construction or administration of the school law, with power to summon witnesses and take testimony, if necessary; and when they have made a decision, said decision shall be binding upon the parties. Either of the parties shall have the right to appeal to the State school commissioner." Without attempting to limit and define the scope of the jurisdiction and authority conferred upon county boards of education and the State school commissioner by the section quoted, we can not agree with the contention that a decision by those tribunals, affecting the taxpayer's right to have funds raised by a tax upon his property for a specific purpose appropriated to and used for the purpose for which such taxation was imposed, can be binding upon the taxpayer so as to prevent an appeal to the courts to prevent a misappropriation of the money or a use of it for purposes not contemplated by the law under which it was raised. In the case of *Clark* v. *Cline,* 123 *Ga.* 856 (51 S. E. 617), it was said: "As to the contention that the board of education of Troup county is a school court, it may be said that for certain purposes and within certain limits this is true. But it is a court of limited jurisdiction. *Cheney* v. *Newton,* 67 *Ga.* 477. It is a tribunal for hearing and determining any matters of local controversy in reference to the construction and administration of the school law. Pol. Code, 1895, § 1364. Thus the board has power as to the establishment and location of schools, the employment of teachers, and, until recently, in the selection of text-books; also in the preservation of order, enforcement of discipline, and the carrying out of the rules that may be established. Controversies occurring out of these and other similar matters are properly for the consideration of the county board of education. *Pierce* v. *Beck,* 61 *Ga.* 413. But they have no power to unlawfully give to a separate local school system money which does not properly belong to it; nor to misapply public funds arising from taxation. Whether their jurisdiction to determine matters of local controversy in reference to the construction and administration of the school law would confer upon them authority to pass upon the constitutionality of an act of the

legislature, or to render a judgment on that subject which would be binding as an adjudication, may well be doubted."

3. While a plea of former adjudication as set forth in this record was filed by the defendants and is insisted upon by the plaintiffs in error here, the record of the former suit in which it is claimed that the questions here raised were determined is not set forth either in the bill of exceptions or in the brief of evidence, nor in any way properly authenticated; and therefore this court can not determine whether such questions have been the subject of former adudication. *Findley* v. *Johnson,* 84 *Ga.* 69 (10 S. E. 594).    *Judgment affirmed.   All the Justices concur.*