## WEBB *et al. v.* JACKSON *et al.*

Where a county has been divided into school districts pursuant to law. and thereafter the voters of a school district authorize the levy of an educational tax to supplement the funds received from the State public-school fund, the apportionment of the public-school fund by the county board of education to such district, in the discretion of the board, may be made on the basis of school attendance; such district receiving such proportion of the State public-school fund as the school attendance of that district bears to the school attendance of the entire county.

NOVEMBER 15, 1913.

Petition for injunction.  Before Judge Freeman.  Heard superior court.  June 23, 1913.

*Hall & Jones,* for plaintiffs.  *O. A. Moore,* for defendants.

EVANS, P. J.  The county of Heard was divided into school districts pursuant to the act of 1906, as embodied in the Civil Code (1910), § 1531.  In three of the school districts thus laid off, elections were held under that act to authorize the levy of a tax to supplement the funds received from the State public-school fund, with the result that the levy of such tax was authorized.  The county board of education apportioned the county's share of the public-school fund among the school districts on the basis of average school attendance.  Whereupon the local trustees and patrons of the three school districts which had adopted local taxation filed a petition against the members of the county board of education, seeking to enjoin them from apportioning the public-school fund on that basis, insisting that the only legal basis of apportionment is that based on school population.  The court denied the injunction.

Prior to the adoption of the constitutional amendment permitting a local educational tax, and the enactment of legislation carrying the same into effect, the statute provided that in cities and counties having local school laws, where schools are sustained by local taxation for a period of five or more months, so much of the public-school fund as is allotted to the county shall be appor-

tioned to such cities and school districts in such proportion as the school population of the city or school district bears to the school population of the county, and the State school commissioner shall transmit directly to the proper officer of the city or school district maintaining by taxation a public-school system for five or more months their respective apportionment. Civil Code (1910), § 1551; *Clark* v. *Cline,* 123 *Ga.* 856 (51 S. E. 617). The remainder of the county fund was transmitted to the county school commissioner for the payment of teachers, and disbursed by him under the authority of the county board of education, who in its disbursement were given full authority in their discretion either to fix salaries for the payment of teachers or to pay them according to enrollment or attendance. Civil Code, § 1549. Thus it will be seen that the educational plan at that time was to segregate the schools of cities and school districts maintaining under local taxation a special system of schools operated for five or more months in the year from the other schools of the county; the former schools being under such management as was provided in the local law, and the latter under the jurisdiction and control of the county board of education. This was the state of the law at the time of the adoption of the constitutional amendment respecting local taxation for schools, commonly known as the McMichael amendment, and the statute enacted to carry the same into effect. This statute provided for the division of the county into school districts, and in laying off the districts the county board of education were to disregard any school districts embracing territory not included in incorporated towns theretofore created by special act of the legislature. Provision was made for a tax to supplement the funds received from the State public-school fund, by levying a tax for educational purposes when authorized by two thirds of the voters residing in the local district. Provision was made for the election of local trustees and a local secretary, and their duties were defined. The local trustees were empowered to make necessary rules and regulations to govern the school district, to build and equip schoolhouses under the approval of the county board of education, to fix tuition rates for non-resident pupils, and to fix the salaries of teachers. It was provided that such local trustees "shall receive from the county board of education the share of the public-school funds apportioned to the district by the county board of education." Civil Code, § 1537. The legislative policy, as declared in the en-

actments respecting the administration of the school law, was to place the responsibility for the proper administration of the school law upon the county board of education, so as to give that board ample power to effectually administer the school laws within their jurisdiction; the scheme comprehending two general features, one for the location and definition of school districts and the administration and government of the schools therein, and the other concerned the method of raising revenue by taxation for the support of the schools.

It was not intended to repeal existing laws respecting the administration of the school system, except when in direct conflict; and the act so expressly declares. *Meadows* v. *Board of Education*, 136 *Ga.* 153 (71 S. E. 146). The provision that the local board of trustees shall receive from the county board of education the share of public-school funds apportioned to the district by the county board of education clearly confers upon the county board of education power to make such apportionment. The act does not specify the manner in which this apportionment shall be made; but inasmuch as the act expressly provides "that the general school laws of this State as administered by the county board of education shall be observed" (Civil Code, § 5545), we must look to the law as it stood at that time. We find no other provision made for the apportionment of the public-school fund than that contained in the Civil Code, § 1549, which confers upon the board of education "full authority in their discretion either to fix salaries for the payment of teachers, or to pay them according to enrollment or attendance." While the local board under the McMichael act was given the power to fix the salaries of teachers, it was also provided that the local board should receive from the county board of education the share of public-school funds apportioned to the district by the county board of education. We apprehend the legislative purpose to have been to continue the operation of the schools under the general superintendence and control of the county board of education, with authority in them to apportion the school fund either according to enrollment or to average attendance of pupils, and that those districts which levy a local tax for educational purposes are not taken from the supervision of the county board of education in their control over the distribution and apportionment of the public-school fund in the counties. The case in hand is to be distinguished from incorporated towns levying a local

tax and operating public-school systems under their charters or special acts of the legislature.

Judgment affirmed. All the Justices concur.