*A. S. Anderson,* contra. .

---

## BOARD OF EDUCATION OF WILKES COUNTY
### *et al. v.* BUTLER *et al.*

1. The county board of education of this State, in counties having a system of public schools supported by local taxation, are authorized to employ, and pay from the school funds of such counties, county demonstration agents, vocational agricultural teachers, and home demonstration agents.

2. The board of education of a county, in which a system of public schools is supported by local taxation, is without authority to employ one to teach agriculture in the high school of a city maintaining an independent public-school system, and to pay such teacher of the funds belonging to the former system, although students from the country districts, as well as those from the city, are taught by such teacher, and although the city furnishes the class-room and laboratory for conducting such teaching; especially where it is not shown that the value of the use of the class-room and laboratory is equal to the funds of the county-school system applied to the payment of such teacher.

No. 3196. NOVEMBER 24, 1922.

Injunction. · Before Judge Shurley. Wilkes superior court. April 7, 1922.

David N. Butler and S. A. Ware, citizens and taxpayers of Wilkes County, filed their petition for injunction against the members of the board of education of said county, alleging, that during the years 1918, 1919, 1920, and 1921, said board of education paid from the public-school funds of said county, annually, a large sum of money to J. L. Burdett, county demonstration agent, Blish Breeland, vocational agricultural teacher, and Mrs. Winnie House, home demonstration agent, under the pretended power of the farm-extension act; and that there is no valid law for the employment of either of these persons, and the payment of their

salaries is an illegal diversion of the funds of the State and county. They prayed that the board of education be enjoined from paying out any of the public-school funds for such purposes. By amendment they alleged that the board of education was threatening to pay to the county demonstration agent the sum of $450 as salary for the period of nine months, to the vocational agricultural teacher the sum of $918.76 as salary for the period of twelve months, and to the home demonstration agent the sum of $1,222.21 as salary for the period of eleven months, from the public-school funds of said county, received from the State and raised by local taxation of the property in said county; that the payment of these salaries from the public-school funds of said county would be a misappropriation of said school funds, because the legislature has not by any enactment authorized the board of education to use any part of said funds for the payment of said salaries; that said vocational agricultural teacher is not employed to teach in the public schools of Wilkes County, but is employed to teach in the high school of Washington, which is a separate system of school from that known as the public schools of Georgia or said county, and the board of education has no authority to pay any portion of the public-school funds of said county to teach in said high school.

In its answer the board of education alleged that they were authorized to employ the agents and teacher referred to, by section 108 of the act of Aug. 19, 1919, which is a codification of the school laws of the State; and that said persons were employed under a provision of this act. The vocational agricultural teacher was attached to the Washington high school, a part of the public-school system of the county (Washington being the county-seat), so as to be accessible to the pupils from the surrounding country. He is paid a salary of $175 per month for twelve months by the county board of education, of which amount $918.76 is supplied by the general school fund, and the balance is paid by Congressional funds. Under the terms of the contract employing him, the city board of education of Washington furnishes a class-room, with laboratory equipment, free; and the salary is paid by the county board of education. He teaches a regular class in said school daily, instructing the pupils of said school and county in tests of milk, seeds, laboratory work as applied to dairying, farming and the growing and fertilizing of crops, and in the actual

planting and working of various grains, vegetables and fruits. The county demonstration agent is paid a salary of $450 per annum, the same being increased from other sources over which defendants have no control. The duties of said farm demonstration agent are to visit the county schools and give lectures therein, to encourage and assist the pupils in forming corn and pig clubs, for increasing the grade of live stock, and production of corn and other crops, in grading seeds, to instruct in proper methods of soil fertilization and analysis, rotation of crops, and general scientific farming methods. The home demonstration agent is paid a salary of $111.11 per month from funds of said board, and $75 per month from the funds of the extension work of the Georgia State College of Agriculture. She is employed by the county board to lecture, encourage and promote home economics, assist in forming poultry and canning clubs in the county, to instruct in proper methods of raising poultry, canning fruits and vegetables, to promote, teach, and assist in forming sewing clubs among the children, to visit the schools of the county, and teach the same subjects in the homes of the county. Employment of said parties is under the direct supervision and control of the board as a part of the educational system of the county.

By an amendment the board alleged that the county, on April 23, 1918, adopted local taxation for school purposes, by an election as provided by section 122 of the School Code of 1919. Said system of local taxation continued in force until the adoption of the amendment to the constitution of 1919, which superseded said system of local taxation then in force. Since said amendment, a county-wide tax for school purposes on property outside the city limits of Washington has been levied, in compliance with said amendment, by the county board of education; and said assessment has been collected and paid over to the board by the proper county authorities. The fund derived from local taxation of property in Wilkes County, and the percentage of the general school fund of the State comprise the public-school funds of the board; and said vocational agricultural teacher, county demonstration agent, and home demonstration agent are employed and paid by said board with said funds. It was agreed between the plaintiffs and defendant that the plaintiffs are taxpayers of Wilkes County; that J. L. Burdette is employed by the county board of education

as county demonstration agent, and is paid out of the school fund of the county, by the board of education, $450 per annum, the funds being derived from local taxation in Wilkes County, and the county's proportionate part of the State's general school fund; that the vocational agricultural teacher is paid a salary of $918.76, by the board of education, out of the school funds of Wilkes County, derived from local taxation and its pro-rata of the State's school fund, to teach vocational training in the high school of Washington. He instructs only children in the eighth and upper grades of said high school, which is operated under an act of the legislature (Ga. Laws, 1890-91, p. 1027), as amended by act of 1920 (Ga. Laws, 1920, p. 1755). The board of education of Wilkes County pays over to the high school of Washington its pro-rata part of the school fund appropriated to Wilkes County. Mrs. Winnie House was employed as home demonstration agent, and is paid $111.11 per month for eleven months from the school funds of the county; and unless enjoined by the court, the board of education of Wilkes County would have paid to these parties the amount of salaries set forth.

The defendants introduced a certified copy of the minutes of the board of education of Wilkes County, of a meeting held Sept. 6, 1921, making a levy of 4 mills on the property of Wilkes County for school purposes in the year 1921. Also, a certified copy of the minutes of the ordinary of the county, which showed that an election was legally called in March, 1918, for the purpose of voting on county-wide local taxation for school purposes; and that the election resulted in favor of the county-wide taxation for school purposes, the result being declared March 23, 1918. Also, various affidavits showing the following facts: (1) that Wilkes County had adopted the system of local taxation for school purposes, provided for in section 122 of the Code of School Laws of 1919; (2) that the salary of the county demonstration agent is $450 per annum, the salary of the home demonstration agent is $111.11 per month, and the salary of the vocational agricultural agent is $175 per month for twelve months, of which $918.76 is paid from the school fund; (3) that said parties are required to lecture in the public schools of the county, according to the general program of work laid down by the State Vocational Board, and their salaries are paid in part from funds raised by local taxation

in said county and from the general school fund, the balance being paid from other funds furnished by the State and Federal government, independently of the amounts paid by the board of education: (4) that the duties of the county demonstration agent are: to visit and lecture in all the schools of the county, to form pig clubs and corn clubs, teach proper grading of grains and cattle, teach and instruct proper soil fertilization and improvement, arrange for the sale and display of products raised by the children of school age of the county, and teach scientific farming generally; (5) that the duties of the home demonstration agent are, to form sewing and poultry clubs, teach canning and sewing in the schools and homes of the county, to lecture in the schools and arrange for the sale and display of canned products, and to teach and instruct in home economics both in the homes and schools of the county; (6) that the vocational agricultural teacher's duties are: to demonstrate and teach horticulture, gardening, grain growing, milk testing, cattle growing and grading, scientific methods of farming and soil fertilization, and to require his pupils to demonstrate the knowledge thus gained: (7) that said parties were employed under section 108 of the Code of School Laws: (8) that Blish Breeland, vocational agricultural teacher, is employed by the board of education of Wilkes County, is a regular teacher in the public schools of Wilkes County, and his work is located at the Washington high school as a central point in the county, and because the Washington high-school furnishes free laboratory equipment and a class-room for his work; (9) that the teaching of agriculture in the Washington high school is on the same basis as other subjects in its curriculum, which is as follows: in the eighth grade, soils and crops; in the ninth, animal husbandry; in the tenth, horticulture and market gardening; and in the eleventh, farm management; and (10) that the course taught by the vocational agricultural teacher is open to boys in the high school of 14 years or older, who are already farming at home, or are preparing to farm. There are 28 students regularly enrolled in these classes at the Washington high school, most of them being from the surrounding country. The schedule of the vocational agricultural teacher in the Washington high-school embraces the hours of 10:45 a.m. to 2:10 p. m., five days each week, and his methods of teaching are those prescribed

by the board of education of Wilkes County and by the State Vocational Board.

The court granted an interloctory injunction, as prayed for by the plaintiffs; and error was assigned on this judgment.

*Clement E. Sutton, Callaway & Howard,* and *Cobb & Cobb,* for plaintiffs in error.

*Hugh E. Combs* and *L. D. McGregor,* contra.

HINES, J. (After stating the foregoing facts.)

1. The county boards of education of this 'State, in those counties having a system of public schools supported by local taxation, since Aug. 19, 1919, have been authorized to employ county demonstration agents, vocational agricultural teachers, and home demonstration agents. By section 19 of article 8 of the Code of School Laws, which was adopted on the above date, it is provided: " Health and hygiene and special instructions as to the nature of alcoholic drinks and narcotics, the elements and principles of agriculture, the elements of civil government, shall be taught in the common or public schools of Georgia as thoroughly and in the same manner as other like required branches, and the board of education of each county and local system of this State shall adopt proper rules to carry the provisions of law into effect." By section 108 of the same article 'of the Code of School Laws it is declared: " The board of education, or other constituted authorities having charge of the public schools in those counties or municipal corporations having a system of public schools supported by local taxation, may open and annex to said public ' schools, in their discretion, a department of industrial education, in which the students may be taught agriculture, home economics, or trades and industries, under such rules and regulations as may be prescribed by the State Board for Vocational Education. It shall be lawful to procure the necessary equipment and pay teachers; and the said board, or other constituted authority, shall determine the number of such schools, the place where located, and the terms or sessions of same, together with the ages at which children may attend the same." Ga. Laws, 1919, pp. 288, 296, 331. The public schools of Wilkes County are supported by local taxation levied upon property lying outside of the incorporate limits of the City of Washington; and under the above provisions of the Code of School Laws, its board of education was fully empowered to employ the above teachers.

But it is insisted, that, under the decision of this court in *Bowers* v. *Hanks,* 152 *Ga.* 659 (111 S. E. 38), the board of education of Wilkes County was without authority to employ these educational agencies. The writer, who wrote the opinion in that case, confesses (and is not an honest confession good for the soul of an appellate judge?) that he was not entirely happy in the use of the language embodied in the paragraph preceding the last sentence in that opinion. Disassociated from the matter then in hand, and from the point decided in that case, this language is too broad. What was decided in that case was, that the county commissioners of Floyd County could make no valid contract in behalf of that county, and pay out county funds thereunder, unless there was a law authorizing the making of such contract; and that there was no law authorizing the county commissioners of that county to employ a county demonstration agent, and to expend the county funds in paying his salary. We were not dealing with the question whether the board of education of that county could engage a county demonstration agent, and pay his salary from the county-school fund; but we were dealing solely with the question whether, under the law, the county commissioners could employ such agent, and pay him from the general funds of the county. We think that decision is sound; and there is no conflict between it and what we decide in this case. They harmonize like the colors of the rainbow.

2. The public-school system of the town of Washington is entirely independent of the system of public schools in the county. 2 Ga. Laws, 1890-1, p. 1027. The schools under that system are under the control of a municipal board of education. Ga. Laws, 1920, p. 1755. Each county is one school district, which is under "the control and management of a county board of education." Code of Schools Laws, Art. 8, sec. 76 (Ga. Laws, 1919, p. 320). The two systems are wholly distinct and separate, and are supported by separate and independent funds. The municipal schools are supported by municipal taxes, and their pro rata share of the State school fund. The county schools are maintained by a school tax levied upon property lying outside of the corporate limits of Washington, and by their pro rata share of the State school fund. The State fund, applicable to Wilkes County, is divided between the public schools of the town and those of the

county, in the proportion which the school population of the former bears to the school population of the latter. Code of School Laws, Art. 8, sec. 63 (Ga. Laws, 1919, p. 314). The vocational agricultural teacher is employed by the county board of education to teach vocational training in the high school of Washington. He teaches students who reside within the city and those who live beyond the municipal limits in the county. Most of the students come from beyond the gates of the town. The City of Washington pays no part of the salary of this teacher. The city furnishes the room in which he teaches and laboratory without charge. The value of these per annum is not shown. The county board of education pays $918.76 of his salary out of the school funds of the county. The plaintiffs insist that this is a misapplication of these funds; and this would clearly be so, if the contribution of classroom and laboratory made by the town does not amount in value to the part of the salary of this teacher paid by the county board. The money arising from the tax on property beyond the town limits, and the pro rata part of the State school fund assigned to the schools lying without these limits, belong to the schools of the county-school system; and no part thereof can be used in instructing the children without the country school districts. The county board of education has "no power to unlawfully give to a separate local school system money which does not properly belong to it, nor to misapply public funds arising from taxation." *Clark* v. *Cline,* 123 *Ga.* 856 (51 S. E. 617); *Hodges* v. *Talbert,* 135 *Ga.* 253 (69 S. E. 103). In *Pace* v. *County Board of Education,* 150 *Ga.* 777 (105 S. E. 366), this court said: "The board of education of a county wherein there exist two separate and independent school districts, one composed of the territory within the corporate limits of a city, the other of all the territory in the county beyond the city limits, can not lawfully appropriate any portion of a fund raised by local taxation in the county district, for the establishment and maintenance of public schools within its limits, in payment to the city district for the tuition of pupils residing in the county district and attending schools of the city district."

The principle of the cited cases applies to this case; and the board of education of Wilkes County is without authority to apply the funds belonging to the public school system of the county, to the establishment and maintenance of an industrial chair in a

high school of the independent city school district, for the education of students from both districts, although the city may furnish the class-room and laboratory for the purpose of conducting such course; it not appearing that the value of the use of such room and laboratory equal the amount of the county school district funds appropriated to the payment of such teacher. We do not mean to rule that if this fact appeared it would change our opinion in this matter.

We think that the trial judge erred in enjoining the county board of education from paying the salaries of the county demonstration agent and the home demonstration agent; but properly enjoined it from payment of the salary of the vocational agricultural teacher.

*Judgment reversed in part, and affirmed in part. All the Justices concur, except Beck, P. J., disqualified.*