PEAK *et al.* *v.* BOARD OF EDUCATION OF CUTHBERT *et al.*

No. 9413. August 9, 1933.

*A. S. Perry* and *George H. Perry,* for plaintiffs.

*Robert L. Moye* and *James W. Harris,* for defendants.

BELL, J.   C. D. Peak and others brought a suit for the writ of mandamus against T. H. Wilkinson, the superintendent of the public schools of the City of Cuthbert, and against the members of the Board of Education of the city, to compel the defendants to permit the children of the plaintiffs to enter the public school of the City of Cuthbert without the payment of a matriculation fee alleged to have been demanded by the defendants. The defendants filed an answer admitting some of the allegations of the petition, and denying others. The case was heard upon an agreed statement of facts. The judge denied the application for the writ of mandamus, and the plaintiffs excepted.

Prior to the year 1910 the County of Randolph was "laid off" into school districts, under the act of August 23, 1905 (Ga. L. 1905, p. 425), as amended on August 21, 1906 (Ga. L. 1906, p. 61). Civil Code (1910), § 1531 et seq. One of these districts, designated as "Cuthbert School District," included the territorial limits of the City of Cuthbert. On August 15, 1910, the General Assembly provided for the establishment of a public-school system in the City of Cuthbert, to be managed and controlled by a board of education of the city. Ga. L. 1910, p. 526, §§ 45-55. The provisions of the act were duly ratified by the qualified voters of the municipality, as provided in section 55, and from the date of such ratification until the present time the City of Cuthbert has maintained and operated its separate school system, having one school for white children and one for colored children within the territorial limits of the municipality. The city levies and collects an ad valorem tax on all property in the city subject to taxation, for

the purpose of operating these schools. In section 50 of the act of 1910 it was provided that the children of non-residents may be admitted upon such terms as may be prescribed by the city board of education. By section 54 it was declared that the county school commissioner of Randolph County "shall be authorized and required to pay over to said board of education under such rules and regulations as they may prescribe, the proportion of the common-school or State public-school funds arising from any source, belonging to said city, to be by them expended in the establishment of said public schools, as authorized and directed by the constitution and laws of this State."

The plaintiffs were patrons of the public school of the City of Cuthbert, established for white children, and the plaintiffs' children had attended this school for the past several years without the payment of any entrance or matriculation fee. At the beginning of the new term in September, 1932, the defendants proposed to charge a stated fee for the matriculation of each child residing without the limits of the City of Cuthbert and attending the grammar school, consisting of grades 1 to 7, inclusive. Such matriculation fee was not to apply to children attending the high-school department, consisting of grades above the seventh grade. The plaintiffs' children, all of whom were children in the grammar-school department, resided within the territory known as the Cuthbert school district, but did not reside within the limits of the municipality. Hence the matriculation fee was exacted of the plaintiffs' children as a condition of their admission into the public school of the city. The public school of the City of Cuthbert is supported in the main from the ad valorem taxes paid upon property in the city, and from the pro rata share of the State school fund, which is paid to the board of education of the City of Cuthbert through the county school superintendent. But the city board of education receives annually from the county board of education for the use of this school other funds, which include the following: (1) Approximately $3000 paid by the county board of education from the State and county school fund, which sum represents a part of the pro rata share of children who reside in Randolph County, and attend the public school of the City of Cuthbert, but who are non-residents of the city, the plaintiffs' children all being of this class. (2) About $4000 of a fund raised by a county-

wide local tax levied for the support of the public schools of Randolph County. The tax levied by the county for this purpose is made applicable to the whole county, including the City of Cuthbert, and the part received by the board of education of the city is intended as an apportionment according to the amount of the tax paid upon city property.

The court erred in not granting the writ of mandamus. The constitution provides for the establishment of a system of common schools, as nearly uniform as practicable, the expenses of which shall be provided for by taxation, or otherwise. The schools shall be free to all children of the State. Civil Code (1910), § 6576. The authorities of a public school which forms a part of the general school system of the State can not charge a matriculation fee as a condition precedent to the admission of children who live in the territory or "subdistrict" of such school and who are otherwise qualified. *Moore* v. *Brinson,* 170 *Ga.* 680 (2) (154 S. E. 141); Civil Code (1910), § 1509, Ga. L. 1919, p. 288, § 110, Park's Code Supp. 1922, § 1437(jj). In a district which levies a local tax for educational purposes, the board of trustees "shall have the right to fix the rate of tuition for non-resident pupils." Ga. L. 1919, p. 288, § 129, Park's Code Supp. 1922, § 1438(m). But this provision has reference to county schools which are situated in local tax districts, and thus can have no application in the present case, because the public school of the City of Cuthbert is not a school of that class. Under the constitution and laws of this State, a municipality may operate an independent local system; and where this is done, a fee may be charged for the admission of children who do not reside in the municipality *Irvin* v. *Gregory,* 86 *Ga.* 605 (4) (13 S. E. 120); *Edalgo* v. *Southern Ry. Co.,* 129 *Ga.* 258 (4), 266 (58 S. E. 846). The question arises, therefore, as to whether the public school of the City of Cuthbert is being conducted and maintained as an independent municipal system. In our view of the case, we need not determine whether such a system was contemplated by the act of 1910, providing for the establishment of public schools in the City of Cuthbert. Whatever may have been the intention and effect of that statute as creating an independent system, it is our opinion that the board of education of the City of Cuthbert have in fact established such relations with the county board, and have placed the school in such a financial

status, that it must be treated as a common school of the County of Randolph so far as these plaintiffs and their children are concerned. While the plaintiffs' children do not reside in the City of Cuthbert, they have been accustomed to attend this school, and by reason of such attendance the city board has received from the county board a part of the State school fund which would otherwise have gone to the schools of the rural districts. The school authorities of the City of Cuthbert can not take from the county board of education the funds accruing for the benefit of these children, without affording them the privilege of a free school, according to the spirit of the constitution and laws of this State. After allowing these children to attend the city school, and after receiving from the county board of education a sum of money based upon such attendance, the defendants will not be heard to say that the city school is independent of the county system, and will be estopped from charging a matriculation fee for the admission of such children.

It is true that by section 68 of the School Code (Ga. L. 1919, pp. 288, 316, Civil Code of 1910, § 1551) it is provided that where the children of a county do not reside in the town or city, but attend a public school of such town or city, "they shall be counted in the school population of such town or city and be entitled to have their share of such county fund paid over to the proper officer of the school board of such town or city." But this provision does not purport to authorize the city board to charge a matriculation fee for such children. On the contrary, in legalizing the transaction between the city and county boards it impliedly qualifies the right of independent municipal systems to charge a fee for the admission of non-resident children. Since it is the declared policy of the law to provide a system of free schools for the children of this State, the more reasonable construction is that a matriculation fee may be charged against non-residents only where there is no overlapping of public funds; and that where a city receives from a county board of education State funds as tuition for non-resident children, who by reason of their attendance are included in the school census of the city, such tuition should be received by the city board in lieu of the right to assess a matriculation fee. This is to look upon the school laws as a logical and harmonious body, and to apply an interpretation which is most evidently in accord

with the will of the people and of the legislature, as expressed in the constitution and laws respectively, to the effect that the common schools shall be free to all the children. The present school laws do not contemplate that the entrance of children into the public schools shall be partly free and partly on paid admission. Otherwise, it might result that while the State had provided a substantial sum for their instruction, many children would still be denied admission because their parents are unable to pay the remainder. A school conducted on such a mixed and uncertain basis could hardly be called a free school, and it is not presumed that the State would enter into such a haphazard partnership with patrons.

The public school of the City of Cuthbert also received from the board of education of Randolph County a portion of the proceeds of a county-wide tax levy for educational purposes. If the public school of the City of Cuthbert was an independent school, this tax levy should not have been made against property in the City of Cuthbert, but should have been applied only to the property in the remainder of the county. *Smith* v. *Board of Education of Washington County,* 153 *Ga.* 758 (113 S. E. 147); *Glenn* v. *Trion Co.,* 157 *Ga.* 639 (122 S. E. 52); *Almand* v. *Board of Education of Laurens County,* 161 *Ga.* 911 (2) (131 S. E. 897). For some reason, however, the levy was made to include property within the City of Cuthbert, and in view of this fact the city board of education received a proportional amount of the entire county-wide fund. Notwithstanding a portion of this fund was derived from property located in the City of Cuthbert, it was nevertheless a county fund, and was so treated by the school authorities both of the city and of the county. If this county-wide tax levy which included the City of Cuthbert was a proper procedure, it would seem to follow that the schools of the city have been merged with those of the county as a part of the county system. On the other hand, if the levy was illegal in so far as it included property in the City of Cuthbert, this would be a matter for complaint by the taxpayers, and would not entitle the city board of education to claim a pro rata share of such fund. The fund would still be subject to the control of the county board of education; and when the school authorities of the city received a substantial portion of this fund, which was levied and collected for the benefit of the children of the county, they necessarily assumed an obligation to admit into the city school such

children as resided in the Cuthbert school district and were otherwise qualified, regardless of whether they were residents of the City of Cuthbert.

The plaintiffs contend that because of the receipt of still other funds the public school of the City of Cuthbert should be treated as a common school of the County of Randolph. We do not deem it necessary to pursue the inquiry further, so far as the source and application of the school funds are concerned. We have considered two classes of funds the receipt and use of which for the benefit of the public school of the City of Cuthbert should estop the city board of education from denying that this school was a part of the county system as respects the plaintiffs' children. What has been said upon the subject of estoppel is fully authorized by the decisions in *Wilson* v. *Stanford,* 133 *Ga.* 483 (2, 3) (66 S. E. 258), and *Brinson* v. *Jackson,* 168 *Ga.* 353 (2) (148 S. E. 96).

A constitutional amendment proposed in 1931 and ratified in 1932 provided that "county boards of education, independent school systems, and local school districts may contract with each other for the education, transportation, and care of children of school age." Ga. L. 1931, p. 105. This amendment does not alter our conclusion in the present case. It contains nothing to indicate that the school authorities may by any sort of contract impose a duty upon patrons to pay a matriculation charge to which the children would not otherwise be subject.

The present case does not involve any question as to the right of taxpayers of the City of Cuthbert to object to the admission of the plaintiff's children as pupils. Perhaps the fortunes of the taxpayers of the city as beneficiaries of the funds received from outside sources would be linked with those of the board of education of the city, so long as the present financial status is permitted to continue. Citizens and taxpayers of the city might possibly have some remedy against continuation of the system, if the same is not agreeable. These questions, however, do not call for decision in the present case. Compare *Pace* v. *County Board of Education,* 150 *Ga.* 777 (105 S. E. 366) ; *Board of Education* v. *Butler,* 154 *Ga.* 569 (115 S. E. 10). In view of the undisputed facts, the court erred in not granting a mandamus absolute.

*Judgment reversed. All the Justices concur, except Hill, J., absent because of illness.*

ATKINSON, J., concurs in the judgment.