## TEXAS CENTENNIAL CENTRAL EXPOSITION v. GREENWOOD.

No. 8528.

Court of Civil Appeals of Texas. Austin.

June 5, 1936.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, and Wm. McCraw, Atty. Gen., and Llewellyn B. Duke, Asst. Atty. Gen., for appellant Texas Centennial Central Exposition.

Polk Shelton, Emmett Shelton, and Everett L. Looney, all of Austin, for appellee C. L. Greenwood.

BAUGH, Justice.

Appeal is from an order granting a temporary injunction ex parte, without notice or hearing, in favor of appellee, in a suit brought by him as a taxpayer, enjoining the Commission of Control for Texas Centennial from approving or acquiescing in the act of Texas Centennial Central Exposition in expending any moneys for, or the placing of, the equestrian statue of William F. Cody (otherwise known as Buffalo Bill) within the grounds of the Central Exposition at Dallas; and enjoining the Texas Centennial Central Exposition from taking any further steps towards or expending any funds for the placing of such statute within said grounds.

Pursuant to constitutional amendment authorizing same, the Legislature in 1934 provided for a Texas Centennial celebration in the year 1936, and created "The Texas Centennial Commission" as a public corporation for the purpose of "planning, inaugurating, supervising, directing, conducting and holding the Texas Centennial," giving said commission extensive powers in connection with same and appropriating $100,000 for the purpose of carrying out said act. Vernon's Texas Stats.1936, art. 6144b, Acts 2d C.S., 43d Leg., 1934, p. 164, ch. 69. The city of Dallas having been selected as the place for the central exhibits, the Legislature in 1935 appropriated $3,000,-000 for the purpose of "creating and conducting celebrations commemorating the heroic period of early Texas history and celebrating a century of the independence and progress of Texas as a Republic and State, and for other purposes incident thereto, etc." Of this sum $1,000,000 was allocated to the erection of exposition buildings at Dallas; $200,000 to equip and furnish such buildings; $500,000 to state and national publicity advertising the Centennial; and the remainder to be spent for expositions, etc., in Texas outside of Dallas. Vernon's Texas Stats.1936, art. 6144c, Acts 1935, 44th Leg. p. 427, c. 174. This latter act created the Commission of Control and prescribed its duties. Section 21 of said act provided that 75 per cent. of the net receipts of the Central Exposition at Dallas, after payment of expenses and a $2,500,000 bond issue, shall be paid into the state treasury until the $3,000,000 appropriated is repaid to the state. The act clearly contemplates the expenditure by the Centennial Commission, upon approval of the Commission of Control, of large sums of money derived from other sources than the legislative appropriation, and necessarily vests in them a liberal discretion in carrying out the purposes of the Centennial.

■ With this general statement we now advert to the appellee's pleadings. Suit was by Greenwood as a taxpayer to prevent the expenditure of the taxpayers' moneys for an alleged illegal and unauthorized purpose. His contention is that since W. F. Cody was not a Texas hero, nor did he play any part in the century of progress of Texas as a republic and a state, his statue has no proper place in the Centennial exposition, would create a wrong impression in the public mind, and that to place it there would violate the spirit and purpose, if not the letter, of the constitutional amendment which authorized such Centennial Exposition, and of the law which provided for its construction and operation.

The public moneys appropriated, in so far as the expenditures in Dallas are concerned, are specifically allocated for a designated purpose. The Art Museum, in front of which it is alleged that said statue is about to be placed, is not shown to have any connection with that appropriation.

This building, with its contents and surroundings, so far as the .pleadings show, may have been paid for out of funds other than those appropriated by the Legislature. There is no allegation that any of the funds so appropriated by the state, which appellee as a taxpayer asserts the right to have legally used, have been or are to be used to place such statue in the designated location. The only allegations in that regard are: "The defendant, Texas Centennial Central Exposition, has made an agreement, the terms of which are unknown to plaintiff, but well known to defendant, with Mrs. Gertrude Vanderbilt Whitney, a resident of the State of New York, whereby said defendant expects to, and will unless restrained, place an equestrian statue of Wm. F. Cody, sometimes known and referred to as Buffalo Bill, within the grounds where the Central Exposition will be held, and in a prominent place, namely, just outside the entrance of the Art Museum."

Nowhere is it alleged that under such agreement the Texas Centennial Central Exposition is or will be required to pay out any funds from any source for that purpose. We find nothing in the legislative acts relating to an art museum, nor as to what works of art shall be placed within or about such building. Those matters consequently must rest within the discretion of those in charge of the Centennial. Nor is there any allegation that such statue is not a work of art, and not entitled to be placed within the Exposition grounds as such.

The only interest, if any at all, appellee as a taxpayer could have, therefore, would be the contingent interest in the net receipts from the Centennial to be paid into the state treasury, after expenses and bonded indebtedness have been paid, to reimburse the state for public moneys appropriated by the Legislature. But there is no allegation that the placing of such statue in the location designated, or anywhere else, would in any manner increase, decrease, or otherwise affect such prospective or potential return to the state. Under these circumstances we think appellee's petition wholly failed to allege any damage to himself upon which he was entitled to the relief sought, or, having failed to allege a diversion of tax money, that he was authorized to bring this suit. Fisher v. City of Bartlett (Tex.Civ.App.) 76 S.W.(2d) 535; 40 Tex.Jur. 184.

In no event was he entitled to an injunction without giving the appellant notice and an opportunity to be heard. His only allegation in that regard was: "There is not time sufficient within which to give defendants notice and to have a hearing, because defendant Texas Centennial Central Exposition has already made the agreement aforesaid and is in the act of carrying same out."

This is but a conclusion and not predicated upon sufficient specific allegations of fact to sustain it. It affirmatively appears from the petition, we think, that a temporary restraining order would have amply protected all rights, if any, which appellee had in the premises, until a hearing could have been had. Injunctions without notice are looked upon with disfavor and should not be granted except where injury is imminent or imperative necessity requires it. And where a temporary restraining order will suffice, that, and not an injunction, should be issued. 24 Tex.Jur. 175.

For the reasons stated, the injunction granted is dissolved, and the cause reversed and remanded.

Injunction dissolved; cause reversed and remanded.