AIKEN *v.* ARMISTEAD *et al.*

No. 12258.   JUNE 24, 1938.

*G. Seals Aiken,* for plaintiff.

*M. J. Yeomans, attorney-general, W. H. Duckworth,* and *Ellis G. Arnall,* for defendants.

BELL, Justice.   On November 5, 1937, C. P. Aiken, a citizen and taxpayer, of Fulton County, Georgia, filed a suit in equity against W. B. Harrison, T. Grady Head, and J. B. Jones, composing at the time the State Revenue Commission, and against John Armistead, in which action the plaintiff sought, among other things, to cancel an alleged contract made by Harrison, Head, and Jones as members of the State Revenue Commission, with John Armistead, authorizing him to assess and collect all ad valorem taxes due to the State of Georgia on unreturned "intangible" property, for the preceding seven years, on the basis of twenty per cent. commission to Armistead; and to enjoin further procedure under the contract.   After the allowance of several amendments to the petition, the court, at interlocutory hearing, sustained a general demurrer and dismissed the action, and the plaintiff excepted.   In the bill of exceptions error is also assigned upon exceptions pendente lite taken by the plaintiff to the refusal of the judge to grant a temporary restraining order on presentation of the petition, and to his refusal to allow introduction of evidence at the interlocutory hearing.   According to our view of the case, any question of error in the intermediate rulings will be controlled by a proper decision as to whether the petition as amended was sufficient to state a cause of action; and therefore no further reference will be made

to the exceptions pendente lite. The petition as amended is very lengthy; but since the whole of it must be considered in determining whether the court erred in sustaining the general demurrer, we will endeavor to state it in substance, following generally in this respect what appears to be a true and correct statement in the brief of counsel for the plaintiff in error. See Rules 13, 14, and 15, 178 *Ga.* page VIII.

Petitioner is a citizen and taxpayer of the City of Atlanta, Fulton County, Georgia, and of the United States, and has been for many years. He is vitally interested in the welfare of the people of the State of Georgia and of the United States, and in maintaining intact and unimpaired our republican system of government, as declared in the Declaration of Independence and established by the constitution of Georgia and the constitution of the United States. John Armistead and the other defendants herein named have entered into a contract under which Armistead is to receive at least 20 per cent. commission on the amount of taxes he collects for the State of Georgia. The contract authorizes Armistead to assess and collect state taxes on all unreturned intangibles owned or controlled by citizens of Georgia and the United States, for the next preceding seven years. The defendants anticipate and intend collecting through Armistead the sum of $100,000,000, at least, in alleged taxes due the State of Georgia on alleged unreturned intangibles owned or controlled by citizens of Georgia and the United States during the next preceding seven years, in addition to all other taxes of every kind and nature which have been paid on said intangibles to the various units of government. The said assessments and collections are to be based entirely upon alleged information and statements and assumed and asserted authority of John Armistead. Said contract authorizes and anticipates Armistead's being in effect the law, the jury, and the judge as to whether said alleged citizens, or any of them, owe the State of Georgia or any municipality or county of Georgia any ad valorem taxes for any or all of the said years, and, if so, how much, upon what basis, upon what theory or authority, and in what amount. Armistead is acting as judge and jury and the law as to what compromise or settlement shall be made of said alleged taxes due by citizens. Armistead is permitted, under said contract and arrangement, to use his own arbitrary discretion in discriminating between said al-

leged citizens of the municipalities and counties of Georgia, of the State of Georgia, and of the United States, in conducting inquisitions of said citizens in regard to said alleged taxes due by them, and in placing said alleged unreturned intangibles upon the tax digests, in assessing taxes thereon, in giving legal advice and notice relative thereto, and in holding or not holding hearings with reference thereto.

Armistead is discriminating in his own arbitrary discretion against the alleged "holders of intangible out-of-state investments" and in favor of holders of investments within the State of Georgia, by assessing and collecting more taxes on the same class of property from the former than the latter under said contract, contrary to amendment 14 of the United States constitution, which declares: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall . . deny to any person within its jurisdiction the equal protection of the laws." Code, § 1-815. The said conduct of Armistead is contrary to article 1, section 1, paragraph 2, of the constitution of Georgia, providing that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." § 2-102. It is also contrary to the uniformity required by the constitution of Georgia in article 7, section 2, paragraph 1, as follows: "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." § 2-5001. The defendants, especially Armistead, have already discriminated in many instances between holders of intangibles during said seven-year period, in his own arbitrary discretion and that of his confederates, and in the arbitrary discretion of the other defendants herein named, through themselves and their confederates, in open violation of the provisions of the United States and Georgia constitutions just quoted. Armistead personally, and through twenty-five or thirty of his confederates, is spying upon, inspecting, investigating, giving legal advice and opinions in regard to assessing, writing about, demanding returns and payment of taxes upon alleged intangibles claimed by him to have been unreturned by said citizens during said seven-year period while owning, holding, or controlling them, or hav-

ing an interest therein, and Armistead has been thus conducting "a general, roving, offensive, inquisitorial, compulsory investigation" concerning said citizens of Georgia and the United States, "without any allegations, upon no fixed principles, and governed by no rules of law or evidence, and no restrictions except" his own "will or caprice" and that of the other defendants herein named and their confederates, and said procedure "is unknown to our constitution and laws, . . and an inquisition destructive of the rights of the citizen, and an intolerable tyranny." Said procedure is depriving the citizens of Georgia and of the United States of the equal protection of the laws, of the enjoyment of liberty, of the right to proceed unmolested in earning a livelihood for themselves and their families, of the right to pursue and obtain happiness and safety, of security in their persons and property, of the right to be protected in their persons and property and not to be deprived of liberty or property without due process of law in violation of the 14th amendment of the United States constitution and article 1, section 1, paragraph 3, of the Georgia constitution, and of their right to privacy and to be let alone as citizens.

Armistead is advising the other defendants, the Governor of Georgia, and others as to the law pertaining to said unreturned intangibles and the legal rights of the owners and holders thereof, and is thus practicing law without a license and without paying professional tax as a lawyer and contrary to the State laws defining and regulating the practice of law. Armistead is not a lawyer, and is not admitted to practice law in the State of Georgia. He is not a certified public accountant, and is not qualified as a certified public accountant under the laws of Georgia. He is not paying any license or legal tax to carry on the business and professional work he is doing and attempting to do, as described in this petition. He is representing the other defendants against said alleged holders, owners, and controllers of intangibles, and is advising them concerning the law pertaining to taxes, assessments, intangibles, collections, executions, legal notices, hearings, and court proceedings, in violation of the law of Georgia defining and regulating the practice of law in this State, and contrary to the express provisions of the law regulating the State Revenue Commission. Said contract and arrangement with Armistead provide that the said Armistead shall have a fee of at least twenty per

cent. of all ad valorem taxes on alleged unreturned intangibles he and his confederates and assistants can locate, assess, and collect for said seven-year period, and said contract and arrangement contemplate and anticipate that Armistead shall receive a similar contingent fee or more out of all such ad valorem taxes received by the municipalities and counties of Georgia through him, or settlements made by him and his confederates and assistants. Said alleged contract or agreement provides that Armistead shall receive a cash fee out of the taxpayers of Georgia, or out of alleged taxes due the State of Georgia, of at least twenty million dollars as his fee for conducting the illegal, unconstitutional, and unprecedented tax inquisition and fishing expedition briefly described in this petition to the best of petitioner's information and belief.

Many loyal and constructive citizens and taxpayers of Georgia were scared or caused to leave the State by a similar inquisition and drive conducted by John Armistead and his confederates in the County of Fulton and City of Atlanta a few years ago, and the taxes on the several million dollar Hopkins and Scott estates have been lost to the State of Georgia through said procedure. Petitioner also contends that the said actions of the defendants in this case have already caused other fine citizens and taxpayers to remove their residence from this State and to carry their property with them, resulting in great loss in present and future taxes to the State and its municipalities and counties, and still greater loss in splendid citizens who have helped to develop the State. Many large foreign corporations with large investments, property, payrolls, and industrial and business programs in this State are contemplating leaving the State, disposing of their property here, and discharging their Georgia employees, if said contract with Armistead is carried out as intended by defendants, thus shifting millions of dollars in taxes to the backs of the poor, and citizens of moderate circumstances, from the wealthy citizens leaving the State, on account of the said arbitrary, confiscatory, illegal, and unconstitutional contract and program. Petitioner is one of the many thousand poor taxpayers of Georgia, and he has been forced to borrow money to pay his taxes.

It is the information and belief of petitioner that the commerce and industry of the entire State will be permanently and seriously impaired and reduced; that the security and continued operation

of the banks, trust companies, and other financial institutions throughout the State will be seriously jeopardized, if not entirely destroyed; that all commerce, industry, and agriculture will be seriously curtailed and jeopardized and much of it destroyed; that the commerce of Georgia with the other States of the United States and with other nations will be seriously curtailed and jeopardized and much of it destroyed, contrary to article 1, section 8, paragraph 3, of the United States constitution, if the said illegal and unconstitutional contract is not canceled and said program is not stopped promptly by injunction. Petitioner's own property will be greatly and permanently impaired in value by reason of impaired and destroyed business and industry and lost citizens, without due process of law and contrary to article 1, section 1, paragraph 3, of the Georgia constitution and the 14th amendment of the United States constitution, unless said contract is canceled and said program is stopped promptly by injunction. It is petitioner's belief that the prompt and full relief of a court of equity is absolutely essential in this matter, to prevent a great multiplicity of suits with consequent tremendous expense. The cancellation of said contract and enjoining of said program are absolutely necessary to prevent the serious jeopardy and impairment of the public schools and other public institutions of the State by said enormous contemplated fee of over twenty million dollars to Armistead, and the resulting great loss of property and citizens to tax in the future. Damages to the people of Georgia as a whole, and to each citizen thereof, including petitioner, will be irreparable if said contract is not canceled and said program is not promptly and permanently enjoined. Neither petitioner nor any other citizen or taxpayer of Georgia has an adequate remedy at law, and the jurisdiction and relief of this court in equity are essential to justice and to save the State and its people from irreparable loss and destruction as the result of said contract and program described.

Said contract and program would confer upon Armistead the power and duties of the municipal, county, and state tax-assessors and collectors, and many times their compensation combined, contrary to the law and constitution of this State. The contract between the defendants to "farm out" said alleged taxes to Armistead on a contingent-fee basis of twenty per cent. or more, as aforesaid, amounts to a conspiracy between and among the defendants to

assess and collect from a large class of taxpayers of Georgia $100,-000,000 or more as taxes on alleged unreturned intangibles, in an illegal, unconstitutional, fraudulent, extortionate, and confiscatory manner, so that the said twenty million dollars or more may be obtained as a fee by Armistead out of the taxpayers of Georgia or out of the alleged taxes due the State of Georgia. Said contract is a fraud upon the taxpayers and citizens of Georgia, on all the grounds set forth in plaintiff's petition, and many others too numerous to mention; it is contrary to the principles of our government and to the inherent rights and liberties of a free people; and it is contrary to the public policy of this State as set forth in the Georgia Code, § 20-504. Neither the State Revenue Commission nor its members nor any of them, nor any other person or organization, has any right in law or equity under the constitution of this State, or the constitution of the United States, to make a contingent contract with Armistead or any other person to locate, assess, and collect taxes allegedly due the State of Georgia or any of its counties or municipalities; and therefore the said contract with Armistead is contrary to the express law of this State and to article 4, section 1, of the Georgia constitution.

In order to prevent the confiscation of millions of dollars of trust funds belonging to widows, orphans, invalids, children, and aged and disabled persons in alleged taxes due the State and its municipalities and counties, so that said enormous fee of approximately twenty million dollars or more may be paid to said contingent tax investigator, assessor, and collector Armistead, it is essential that the said contract be canceled and said program be permanently and promptly enjoined. Petitioner further contends unless said contract be canceled and said program be permanently enjoined promptly, several million dollars of trust funds in this State will be removed from Georgia, as well as many good citizens who are entirely dependent upon said trust funds.

Said contract confers upon Armistead all legislative, judicial, and executive powers pertaining to said alleged unreturned intangibles and the owners, holders, and controllers thereof in reference thereto, in open violation of article 1, section 1, paragraph 23, of the Georgia constitution, quoted as follows: "'The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of the one shall, at the same

time, exercise the functions of either of the others, except as herein provided." And it is petitioner's information and belief that there is no exception in favor of Armistead. Said contract confers upon Armistead more power and authority than that possessed by the legislative, executive, and judicial departments of this State, all combined, pertaining to said alleged unreturned intangibles and their owners, holders, and controllers in reference thereto. It is further alleged that said contract and program violate every one of the "three protective rights of the individual—that against compulsory self-accusation, that against unlawful searches and seizures, and that against inquisitorial investigations." The said contract and program constitute an illegal search and seizure, in open violation of article 1, section 1, paragraph 16, of the Georgia constitution, and amendment 4 of the United States constitution. It is petitioner's information and belief that the total receipts of the State of Georgia for 1935 for taxes, special charges, and fines amounted to only $28,218,696.38, and for 1936 to only $30,058,-092.65, and that the said contract with Armistead provides he is to receive a contingent fee of twenty per cent., which it is anticipated will amount to the sum of twenty million dollars or more, or almost as much as the entire income of the State of Georgia for 1935 or 1936 from all taxes, special charges, and fines; and that such a contract on the face of it is a gross fraud upon the taxpayers and citizens of this State, and contrary to the public policy of this State.

In June, 1934, petitioner purchased his present home known as 364 Tenth Street N. W., at an agreed purchase-price of $3000, but on which a mortgage or security deed was signed by petitioner in favor of National Florence Crittenton Mission for the purchase-money due. Petitioner has been paying city, county, and state ad valorem taxes on the property since he purchased it, and had to borrow money to pay ad valorem taxes for 1936, which amounted to $68. Said property is being used by petitioner as a home for his wife, his two minor children and himself. The said mortgage or security deed provides that the plaintiff shall pay all taxes and assessments that may be liens on said premises, as they may become due; that any tax or assessment not paid when due by plaintiff may be paid by said mortgagee or assigns, and that any sum so paid by the latter may be added to the amount of said prin-

cipal debt as part thereof and draw interest. Petitioner, if forced to pay ad valorem taxes on said security deed or mortgage, would be doubly taxed by being taxed ad valorem on the real estate and then taxed on said security deed or mortgage covering said real estate. He alleges on information and belief that if the said mortgagee or grantee or charity were taxed ad valorem on said mortgage or security deed, such procedure would make it impossible for plaintiff to secure renewal of said loan or said mortgage or any courtesy or extension of payments in the event of his inability to make said payments of principal or interest or taxes, or to meet any other covenant in said mortgage or security deed. He has been employed since approximately August, 1928 or 1927 by the same business firm or corporation in the City of Atlanta and the County of Fulton, a large majority of whose business consists of sales under retention-title contracts. The collection of such ad valorem taxes due on alleged unreturned intangibles on the basis set forth in this petition would cost plaintiff's employer many thousands of dollars of additional taxes and irreparable loss in business. Petitioner is employed on a salary basis, and his salary was greatly decreased during the depression, and it is his firm belief that it would be greatly decreased or terminated entirely if said program were consummated. His wife, his two minor children, and himself, are all dependent upon his income from his position, and the damage from drastically reduced salary or lost employment from said consummated program would be irreparable. He alleges, on information and belief, that it is the intention of Armistead to leave the State of Georgia with said twenty-million-dollar fee, if said contract is not canceled and said program is not enjoined, in the event he collects said fee, and the State would not be able to recover said money. Armistead is not under bond, and the State would not be protected in the event he should abscond or be found insolvent. Petitioner therefore contends said contract should be canceled, and permanent injunction granted promptly as prayed, to save the plaintiff, the State, and the people from irreparable damages.

The plaintiff amended his petition by adding the following allegations: This action is brought against W. B. Harrison, T. Grady Head, and J. B. Jones, individually, and not in their official capacity as members of the State Revenue Commission. The acts charged against them in the petition as amended, while done

in their official capacity, were wholly without lawful authority, and beyond the scope of their official power, and they had no authority whatever in law or equity to do said acts or any of them. Harrison, Head, Jones, and Armistead, have conspired and contracted to defraud the State of Georgia of twenty per cent. of taxes due the State for the next preceding seven years on unreturned intangibles, the conspiracy and contract to be carried out by paying to John Armistead the twenty per cent. of said taxes as an illegal fee or tribute to him. During 1934, petitioner was forced to pay about $25 or $30 on a note he indorsed as a matter of accommodation for a man named Bennett, who has been indebted to petitioner since that time for said sum, with legal interest. Petitioner's employer owed him the following amounts on the dates indicated, which were evidenced by checks of said dates: January 1, 1931, $55; January 1, 1932, $55; January 1, 1933, $45; January 1, 1934, $50; January 1, 1935, $55; January 1, 1936, $55; January 1, 1937, $67.50. Petitioner did not know, during the years referred to above, that the said amounts due were subject to ad valorem taxation by the State and county, and did not know he was supposed or required to return them for said taxation, and therefore he did not return said items. Said items were intangibles or personal property, and each of them was subject to ad valorem taxation by the State and county for the year he had it on January 1st. By said illegal contract Armistead is "preparing" to force petitioner to pay to Armistead a large percentage of said intangibles taxes, and under said contract will keep at least twenty per cent. of the amount he collects, as his own illegal fee or tribute, and to subject petitioner to inquisitions, assessments, and collections in the arbitrary discretion of Armistead; and it is necessary for this court to cancel said contract and enjoin the defendants as prayed, in order to prevent the accomplishment of said iniquitous scheme and confiscation and said irreparable damages to petitioner. He is a citizen and taxpayer, and is equally interested with other citizens and taxpayers of Georgia in the many millions of dollars in taxes being forced out of the State by the state-wide tax racket and inquisition being conducted by Armistead under said conspiracy and contract.

Said illegal contract grants a donation or gratuity to Armistead, in violation of article 7, section 16, paragraph 1, of the Georgia

constitution, quoted as follows: "The General Assembly shall not, by vote, resolution, or order grant any donation or gratuity, in favor of any person, corporation or association." Said contract violates article 4, section 1, of the Georgia constitution, by giving and granting to Armistead the State's exclusive right of taxation with reference to alleged ad valorem taxes due on unreturned intangibles for the next preceding seven years, setting up a dictatorship in regard thereto in Armistead, and limiting and restraining the State's interest in said taxes to the arbitrary discretion of Armistead, not to exceed eighty per cent. of the amount due the State, the remaining twenty per cent. at least to be confiscated by Armistead. Petitioner alleges upon information and belief that said contract attempts to take over and vest in Armistead judicial powers of the State, in violation of article 6, section 1, of the Georgia constitution (Code, § 2-2901). Petitioner alleges that the defendants have conspired to do all of the illegal acts and commit all the irreparable damages to plaintiff set forth in his original petition as amended, and that said conspiracy will be consummated unless the defendants are enjoined and said contract is canceled. All ad valorem taxes on unreturned intangibles for the next preceding seven years due the State of Georgia and its subdivisions can be collected by the public officials charged by law with said duty and paid therefor, without employing Armistead to take over their duties and without paying him one cent. Said public officials can be replaced promptly if they have failed or do fail or refuse to assess and collect taxes due the State and its subdivisions, and the contract to pay Armistead twenty million dollars would be a complete waste and total and unnecessary loss to the taxpayers of Georgia. Said fee to Armistead belongs to all the taxpayers and citizens of this State in equal shares, and the plaintiff would be irreparably damaged to the extent of his pro rata share thereof, and in the many other special, peculiar, and personal particulars set out in his petition as amended.

Unless the prayers of this petition are granted, petitioner alleges that Armistead will secure said fee and abscond, as no action whatever has been taken by any one to prevent the illegal payment of said twenty-million-dollar fee. Petitioner has two minor children in the public schools of the City of Atlanta, Georgia; and it is his information and belief that payment of said twenty-million-

dollar fee to Armistead would result in seriously impairing or closing the public schools. He amends his prayers by adding: "That the said John Armistead be restrained and enjoined from practicing law, as petitioner alleges on information and belief he is doing and has been doing, as set out in the original petition as amended."

■ The contentions made in the brief filed for the defendants may be summarized as follows: (1) The plaintiff as a citizen and taxpayer has no such interest in the subject of the contract or in its effect upon the State funds as to authorize him to maintain the action. (2) The action is in essence a suit against the State, instituted without its consent, which is not permissible under the law. (3) The possibility of injury to the plaintiff or other citizens and taxpayers is too remote and speculative to justify the relief sought. A fact worthy of note in this connection is that in this brief there is no effort whatever to sustain the validity of the contract. Being of the view that the judgment should be affirmed partly for the reason indicated in the third contention, and for others to be given in the course of this opinion, we do not deem it necessary to pass upon the first or the second contention of the defendants. Nor, in the view which we take of the case, is any decision required as to the validity of the contract. Consequently nothing said herein shall be taken as an expression or intimation in regard to its validity. The writer, however, speaking for himself alone, desires to make some further reference to the first and second contentions, before proceeding with the opinion of the court touching the questions upon which, it is thought, the case must, in any view of other questions, be determined adversely to the plaintiff.

In support of the two contentions just stated, the defendants rely mainly upon the decision in *Ramsey* v. *Hamilton,* 181 *Ga.* 365 (182 S. E. 392), and cit. The writer concurred specially in that decision, thinking that the judgment was correct, regardless of the reasons given by the majority. The decision as written was thus not concurred in by all the Justices. While the questions therein dealt with are not necessarily involved in the case at bar, and final opinion thereon should therefore be deferred, it may not be amiss to call attention to some additional authorities, for future reference by any one who may be interested, and incidentally to make some observations regarding such authorities. The statements now

about to be made would have been more timely if contained in my special concurrence in the *Ramsey* case. Their formulation, however, has depended upon opportunity for further study and research.

First, as to the interest of the taxpayer: This court has many times held that citizens and taxpayers of counties and municipalities have such interest as will authorize them to maintain actions to enjoin the unlawful disbursement of the public funds of such counties or municipalities. *State ex rel. Fulgram* v. *Johnson,* 40 *Ga.* 164; *Blake* v. *Macon,* 53 *Ga.* 172; *Keen* v. *Waycross,* 101 *Ga.* 588 (3) (29 S. E. 42); *Wells* v. *Ragsdale,* 102 *Ga.* 53 (29 S. E. 165); *Koger* v. *Hunter,* 102 *Ga.* 76 (29 S. E. 141); *Mayor &c. of Leesburg* v. *Putnam,* 103 *Ga.* 110 (29 S. E. 602, 68 Am. St. R. 80); *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247); *Mitchell* v. *Lasseter,* 114 *Ga.* 275 (4) (40 S. E. 287); *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871, 884 (40 S. E. 1004, 57 L. R. A. 230); *Clark* v. *Cline,* 123 *Ga.* 856, 864 (51 S. E. 617); *Fluker* v. *Union Point,* 132 *Ga.* 568 (64 S. E. 648); *Tolbert* v. *Long,* 134 *Ga.* 292 (67 S. E. 826, 828, 137 Am. St. R. 222); *Henry* v. *Means,* 137 *Ga.* 153 (2) (72 S. E. 1021); *Renfroe* v. *Atlanta,* 140 *Ga.* 81, 99 (78 S. E. 449, 45 L. R. A. (N. S.) 1173); *DeVaughn* v. *Booten,* 146 *Ga.* 836 (92 S. E. 629); *Dancer* v. *Shingler,* 147 *Ga.* 82 (2) (92 S. E. 935); *Brumby* v. *Board of Lights & Waterworks,* 147 *Ga.* 592, 596 (95 S. E. 7); *Board of Lights & Waterworks* v. *Dobbs,* 151 *Ga.* 53 (3) (105 S. E. 611); *Cheney* v. *Ragan,* 151 *Ga.* 735, 741 (108 S. E. 30); *Bennett* v. *LaGrange,* 153 *Ga.* 428 (112 S. E. 482); *Mitchell County* v. *Cochran,* 162 *Ga.* 810, 817 (134 S. E. 768); *City of Fayetteville* v. *Huddleston,* 165 *Ga.* 899 (142 S. E. 280); *McGinty* v. *Pickering,* 180 *Ga.* 447 (179 S. E. 358).

There is some authority, however, to the effect that the same doctrine does not apply to state officers having the management and control of state funds. The distinction was first drawn by the Supreme Court of Washington, in Jones *v.* Reed (1891), 3 Wash. 57 (27 Pac. 1067), where, in discussing the difference between a State and a county, it was said: "The county is a quasi corporation; the State is a sovereignty. The county only possesses such powers as the legislature of the State confers upon it. Its revenue, its property, its very existence, depend upon statutory enactment. It can be enlarged, dismembered, or annihilated at

the will of the State. The State, on the contrary, has all the powers not relinquished to the general government by the Articles of Federation, and, subject to these relinquishments, its sovereignty is supreme. One of the necessary attributes of sovereignty is the protection of the sovereign power and the maintenance of the State organization." After thus speaking, the court drew the following conclusion: "This court, untrammeled by precedent or authority in laying down a policy for this State, deems it safer to relegate the instituting of suits involving the disposition of the revenue of the State, where no private interests are involved, to the judgment and discretion of the attorney-general." It appears that the attorney-general had been expressly directed by statute to act in the situation presented in that case. Several other courts have followed the doctrine there enunciated, but a majority of the courts that have dealt with the question have denied the existence of any such distinction, holding that the principle which sustains the right of a taxpayer of a county or municipality should be applied as well to state officers and state funds. In Fergus v. Russel, 270 Ill. 304 (110 N. E. 130, Ann. Cas. 1916B, 1120), the court said: "Upon principle and reason we perceive no distinction between the right of a taxpayer to enjoin the misappropriation of the public funds from a municipal treasury, and the right to enjoin an invalid appropriation of the public funds from the state treasury." In Leckenby v. Post Printing & Publishing Co., 65 Colo. 443 (176 Pac. 490), the court answered the contention that there was a distinction by saying: "We are committed to a contrary doctrine in regard to municipal and county officials, and we see no legitimate distinction in State officials." In a recent decision by the United States Court of Appeals for the District of Columbia, where citizens and taxpayers joined in a suit against a federal officer, the court after citing cases involving suits by taxpayers of municipalities stated: "We see no distinction where, as in the present case, the same injury is threatened by the action of an outside agency. The injury to the citizen is the same, and the right to prevent the injury should be the same, whether it is threatened by the municipality or by some other governmental agency." Township of Franklin v. Tugwell, 85 Fed. (2d) 208. To the same effect, see Gaston v. State Highway Department, 134 S. C. 402 (132 S. E. 680).

What is perhaps the most impressive effort to establish and uphold the doctrine announced in Jones *v*. Reed, supra, is the decision in Asplund *v*. Hannett, 31 N. M. 641 (249 Pac. 1074, 58 A. L. R. 573), where, after discussing many cases and referring to the analogy between the relation of a taxpayer of a local unit of government and a stockholder in a private corporation, which according to some courts is the foundation of taxpayers' suits, it was said: "We have not been accustomed to recognize any such dual nature of the State. Its business is conducted in its sovereign capacity. The bridge which joins the private corporation and the municipal corporation, and enables the taxpayer to make that crossing, breaks down between the municipal corporation and the State." That decision was cited and largely relied on in *Ramsey* v. *Hamilton*, supra. It has been held by this court: "A taxpayer, though his contribution to the public fund may be small in proportion to the aggregate, nevertheless has such a pecuniary interest in the sum made up from taxes, of which his forms a part, as to authorize him to see that there is no illegal diversion of such sum. Such a fund is in the nature of a trust fund, which equity will preserve from misapplication." *Clark* v. *Cline*, 123 *Ga*. 856, 864 (supra); *Henry* v. *Means*, 137 *Ga*. 153 (2) (supra); *Brown* v. *Taunton*, 169 *Ga*. 240 (150 S. E. 206). While the Georgia cases here cited did not relate to state funds, the same rule has been applied by other courts in cases involving state funds. For instance, in Turnipseed *v*. Blan, 226 Ala. 549 (148 So. 116), in a suit by a taxpayer to enjoin Blan as State treasurer from paying illegal warrants, the court sustained the right to sue, stating that except in degree the taxpayer bears the same relation to state funds as he does to municipal funds and a difference only in degree should not control his right to enjoin an illegal disbursement thereof.

Since the decision in Asplund *v*. Hannett, supra, was delivered by the Supreme Court of New Mexico in 1926, the courts of other jurisdictions have continued in the great majority of the cases to uphold the right of the taxpayer to enjoin an illegal expenditure of state funds. For instance, the Alabama case of Turnipseed *v*. Blan, supra, was decided in 1933. The court in that case referred to Asplund *v*. Hannett, but stated that "a great majority of the States which have considered the subject have applied such right of suit [meaning the right of the taxpayer], though it relates to a

state officer." In 1929, the Supreme Court of Louisiana by a four-to-two decision repudiated its earlier decision in Sutton v. Buie, 136 La. 234, 66 So. 956, L. R. A. 1915D, 178, and sustained the right of taxpayers to enjoin the State board of education, the State superintendent of schools, the State auditor, and the State treasurer from expending state funds in pursuance of a statute that was held to be unconstitutional. See Borden v. State Board, 168 La. 1005 (123 So. 655). In 1932 the Court of Appeals of Maryland, in a suit by taxpayers against the secretary of State and the board of election supervisors of Baltimore City, held that the plaintiffs, as taxpayers interested in avoiding the waste of state funds derived from taxation which would be involved in conducting a void referendum, could properly make application to a court of equity to restrain such expenditure. Sun Cab Co. v. Cloud, 162 Md. 419 (159 Atl. 922). In 1932 the Supreme Court of Illinois, the same court which had decided the earlier case of Fergus v. Russel, 270 Ill. 304 (110 N. E. 130, Ann. Cas. 1916B, 1120), again upheld the right of taxpayers to restrain an unlawful disbursement of state funds. Moran v. Boley, 347 Ill. 148 (179 N. E. 526). While the suit in that case was to enjoin the expenditure of both state and county funds, the action was sustained as a whole, with no distinction as to state funds. In 1932 it was held by the Supreme Court of Wyoming that a suit by a taxpayer in behalf of himself and "of all other taxpayers and electors in the State of Wyoming" could be maintained against the person who was the secretary of State of Wyoming, to enjoin an election, on the ground that it would be void and thus would entail unnecessary and improper expense. Spriggs v. Clark, 45 Wyo. 62 (14 Pac. (2d) 667). In 1934 it was held by the Supreme Court of Minnesota that a taxpayer could sue to restrain the State Rural Credit Bureau from issuing and offering new bonds in exchange for old bonds, contrary to a statute requiring that state bonds should be sold at public auction. In the opinion it was said: "The right of a municipal taxpayer to challenge the issue of municipal bonds is unquestioned. The right of a state taxpayer is identical as to state bonds." Rockne v. Olson, 191 Minn. 310 (254 N. W. 5). Attention has already been called to one decision by the Supreme Court of Alabama, rendered in 1933, after the decision in Asplund v. Hannett, supra. The Alabama court in the same year delivered another decision

involving the same question (Hall *v.* Blan, 227 Ala. 64, 148 So. 601), where it was said: "A taxpayer may maintain a suit to enjoin the State treasurer from diverting public funds, or disbursing same for unlawful purposes. He has a direct interest in seeing that taxes paid are devoted to the ends provided by law. While early decisions in some States sought to differentiate between state and county officers in such suits, the great weight of authority now recognizes this remedy." For still other decisions sustaining the right of the taxpayer, see Wentz *v.* Dawson (1931), 149 Okla. 94 (299 Pac. 493); Spriggs *v.* Clark, supra. For a summary of the views of the various courts, with citations, see Higgins *v.* Green, 56 R. I. 330 (185 Atl. 686).

So far as the writer has been able to ascertain, only one other decision besides *Ramsey* v. *Hamilton,* supra, has approved the doctrine expressed in Asplund *v.* Hannett, supra, since the decision in the latter case in 1926. In 1934 it was held by a Federal district court in Massachusetts that the rule allowing a taxpayer to enjoin a wrongful expenditure of municipal funds does not apply to agencies of the State or Federal Government, and that a taxpayer has no standing to enjoin officers from a breach of public duty, without showing that he will suffer peculiar injury not suffered by the public at large. O'Brien *v.* Carney, 6 Fed. Supp. 761. That, however, was a suit against a Federal officer, and reference to an agency of the State was clearly obiter. The decision in Massachusetts *v.* Mellon (1923), 262 U. S. 447 (43 Sup. Ct. 597, 62 L. ed. 1078), was based on relation of the taxpayer to the Federal Treasury, and not to state funds. As bearing on the question of special *injury* to the citizen and taxpayer by a wrongful diversion of public funds, see Frame *v.* Felix, 167 Pa. 47 (31 Atl. 375, 27 L. R. A. 802); Pierce *v.* Hagans, 79 Ohio, 9 (86 N. E. 519, 36 L. R. A. (N. S.) 1); Gaston *v.* State Highway Department, 134 S. C. 402 (132 S. E. 680); Donaldson *v.* Police Jury, 161 La. 471 (109 So. 34); Woodruff *v.* Welton, 70 Neb. 665 (97 N. W. 1037); Weatherer *v.* Herron, 25 S. D. 208 (126 N. W. 244); Terrell *v.* Middleton (Tex. Civ. App.), 187 S. W. 367; White Eagle Oil &c. Co. *v.* Gunderson, 48 S. D. 608 (205 N. W. 614, 43 A. L. R. 397); Farrell *v.* Oliver, 146 Ark. 599 (226 S. W. 529); Green *v.* Jones, 164 Ark. 118 (261 S. W. 43); Fergus *v.* Russel, 270 Ill. 304 (110 N. E. 130, Ann. Cas. 1916B, 1120);

Newmeyer *v.* Missouri &c. R. Co., 52 Mo. 81 (14 Am. R. 394) ; State ex rel. Bolens *v.* Frear, 148 Wis. 456 (134 N. W. 673, L. R. A. 1915B, 569, 589, Ann. Cas. 1913A, 1147).

Second, as to whether the action is a suit against the State: In Re Ayers, 123 U. S. 443 (8 Sup. Ct. 164, 183, 31 L. ed. 216), it was said that the rule as to immunity of the State does not "forbid suits against officers in their official capacity, either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest." In Ex parte Young, 209 U. S. 123 (28 Sup. Ct. 441, 52 L. ed. 714), it was stated that when it appears that the officer is acting contrary to law, "he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." In White Eagle Oil &c. Co. *v.* Gunderson, supra, it was said: "The distinction between suits against state officers may be expressed as follows: Those cases in which the decrees require, by affirmative official action on the part of the defendants, the performance of an obligation which belongs to the State in its political capacity, are suits against the State; while those actions at law or suits in equity maintained against defendants who, while claiming to act as officers of the State, violate and invade the personal and property rights of the plaintiffs under color of authority unconstitutional and void, are not suits against the State. In these latter cases the defendant is sued, not as or because he is an officer of the government, but as an individual; and the court is not ousted of jurisdiction because the defendant asserts authority as an officer of the State. To make out his defense, he must show that his authority was sufficient in law to protect him." See also *Cannon* v. *Montgomery,* 184 *Ga.* 588 (192 S. E. 206) ; *Stanley* v. *Sims,* 185 *Ga.* 518 (195 S. E. 439) ; *Dennison Manufacturing Co.* v. *Wright,* 156 *Ga.* 789 (120 S. E. 120) ; Poindexter *v.* Greenhow, 114 U. S. 270 (5 Sup. Ct. 903, 962, 29 L. ed. 185) ; Smyth *v.* Ames, 169 U. S. 466 (18 Sup. Ct. 419, 42 L. ed. 819) ; Public Service Co. *v.* Corboy, 250 U. S. 153 (39 Sup. Ct. 440, 63 L. ed. 905) ; Goltra *v.* Weeks, 271 U. S. 536 (46 Sup. Ct. 613, 70 L. ed. 1074) ; Sterling *v.* Constantin, 287 U. S. 378 (53 Sup. Ct. 190, 77 L. ed. 375) ; Pennoyer *v.* McConnaughy,

140 U. S. 1 (11 Sup. Ct. 699, 35 L. ed. 363); Wentz *v.* Dawson, supra; Rockne *v.* Olson, supra; Osborn *v.* United States Bank, 9 Wheat. 738 (6 L. ed. 204); United States *v.* Lee, 106 U. S. 196 (1 Sup. Ct. 261, 27 L. ed. 171); Norwood *v.* Baker, 172 U. S. 269 (19 Sup. Ct. 194, 43 L. ed. 443).

While, as may be inferred from the foregoing, the writer would be inclined to the view that a citizen and taxpayer is not without remedy in equity for a waste or unlawful expenditure of state funds, and that in a case like the present, if the contract is unlawful, the action could not be properly classed as a suit against the State, yet, as indicated above, it is the view of the entire court, including the writer, that a decision upon these questions is not required in the present case; and such being the case, the writer desires to repeat that final opinion thereon is reserved for the time being and until such time as an adjudication is necessary. Should that occasion ever arise, it will be interesting to consider again the bearing of the following decisions by this court: *Mayor &c. of Gainesville* v. *Simmons,* 96 *Ga.* 477 (23 S. E. 502); *Peeples* v. *Byrd,* 98 *Ga.* 688 (25 S. E. 677); *Sanders v. Ballard,* 160 *Ga.* 366 (127 S. E. 851); *Holt* v. *Fayetteville,* 169 *Ga.* 126 (149 S. E. 892); *Perkins* v. *Madison,* 175 *Ga.* 714 (165 S. E. 811). They may be distinguishable, and some of them may contain obiter dicta. Nothing that has been said thus far shall be taken as implying anything as to the views of any other member of this court. Now, having cleared the preliminaries and expressly laid aside the questions that are not decided, we will proceed with the opinion of the court.

■ The petition as amended alleged that the plaintiff himself has for several years past failed to return "intangible" property owned by him and showed that he is indebted to the State for taxes thereon. It further alleged that Armistead is "preparing" to force petitioner to pay him a large percentage of said intangible taxes, and under his contract with members of the revenue commission will keep at least twenty per cent. of the amount he collects. As to this phase of the petition, it fails to state a cause of action, for the following reasons: (*a*) The plaintiff is seeking relief in a court of equity, and should do equity. Code, § 37-104. He alleges no tender of the amount of the taxes due by him; and even if it should be considered that the sum is uncertain, he does not offer to do

equity or to pay the correct amount upon its ascertainment. *City of Waycross* v. *Cowart,* 164 *Ga.* 721 (3) (139 S. E. 521); *Peoples Credit Clothing Co.* v. *Atlanta,* 173 *Ga.* 653 (160 S. E. 873); *Candler* v. *Gilbert,* 180 *Ga.* 679 (180 S. E. 723); *Pierce Trading Co.* v. *Blackshear,* 182 *Ga.* 649 (186 S. E. 721); *Wilkinson* v. *Holton,* 119 *Ga.* 557 (46 S. E. 620); Peoples National Bank of Lynchburg *v.* Marye, 191 U. S. 272 (24 Sup. Ct. 68, 48 L. ed. 180). (*b*) The petition does not show such imminent danger of interference as to authorize the grant of an injunction. *Rounsaville* v. *Kohlheim,* 68 *Ga.* 668; *Bacon* v. *Walker,* 77 *Ga.* 336; *Christokas* v. *West,* 181 *Ga.* 513 (182 S. E. 895). So far as the plaintiff alone is concerned, it alleges only that Armistead is "preparing" to do thus and so, and to this extent it is based on mere apprehension. *Bowden* v. *Georgia Public-Service Com.,* 170 *Ga.* 505 (153 S. E. 42); *Georgia Public-Service Com.* v. *Parcel Delivery Co.,* 177 *Ga.* 601 (170 S. E. 800); *Southern Oil Stores Inc.* v. *Atlanta,* 177 *Ga.* 602 (170 S. E. 801); *Sparks* v. *Georgia Public-Service Com.,* 178 *Ga.* 51 (172 S. E. 15); *Howard* v. *Briarcliff Zoological Cor.,* 178 *Ga.* 595 (173 S. E. 391). (*c*) The plaintiff could so easily avoid the apprehended interference by dealing directly with proper authorities and paying the sum due or determined to be due. No injunction or cancellation appears to be necessary to protect his interests. If, on his paying or offering to pay the proper amount in this manner, it should appear that a portion was about to be diverted unlawfully to Armistead, then perhaps he might be entitled to injunction,—assuming in his favor the invalidity of the contract and the right to sue, as discussed in the preceding division. (*d*) The petition refers to the possibility of double taxation, in connection with his home and the note and mortgage thereon. This is no ground of complaint as to the conduct of the defendants, because the alleged contract between them would have no bearing either way upon the possibility of double taxation under the law. It is not alleged that his legal status or *liability* would be changed as to this feature.

■ "The general rule of law is, that when a person is required to do a certain act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended that he has performed it, unless the contrary be shown." *Mauldin* v. *Southern University,* 126 *Ga.* 681, 683 (55 S. E. 922, 8 Ann. C. 130). "The

law presumes that every man, in his private and official character, does his duty, until the contrary is shown." *Nicholson* v. *Spencer*, 11 *Ga.* 607, 611; 10 R. C. L. 880, 881; *English* v. *Poole*, 31 *Ga. App.* 581 (2) (121 S. E. 589). The petition refers to "alleged taxes due the State of Georgia on alleged unreturned intangibles." This and similar expressions are repeatedly made. The word "alleged" as thus employed refers throughout to what is claimed by the defendants to be due as taxes on unreturned intangibles, and not to any averment contained in the petition. The presumption being that the citizens had performed their duty and made proper returns of all their taxable property, it cannot be assumed, without averment to that effect, that there is any sum due on "unreturned intangibles." With the exception of the allegation in reference to himself, and aside from vague inferences, the plaintiff nowhere alleges that any sum is due as taxes on such property. If Armistead by duress, intimidation, or extortion should collect from other taxpayers sums that are not due, the reservation by him of a commission would not result in loss to the State as a corporate entity in which the plaintiff is interested as a citizen and taxpayer, and therefore would afford no cause of complaint to the plaintiff. As showing that the averments are not sufficiently positive, see *Charleston & Western Carolina Railroad Co.* v. *Augusta Stockyard Co.*, 115 *Ga.* 70 (41 S. E. 598). But even if the petition should be construed as showing that the citizens are due to the counties and the State of Georgia any amount, whether great or small, as taxes on unreturned intangibles, there is no allegation that any part of the same would ever be paid independently of the contract assailed in the petition. Consequently, it does not appear that the plaintiff as a taxpayer interested in the *public funds* would *suffer* by any depletion of the public treasury or by any diversion therefrom. The "potential return to the State" would not be diminished. Texas Centennial Central Exposition *v.* Greenwood (Tex. Civ. App.), 94 S. W. (2d) 813. On the contrary, the public funds in which he is interested would be increased, despite the payment or reservation of illegal commissions. The plaintiff must show injury before he is entitled to injunction or cancellation. *Mayor &c. of Gainesville* v. *Simmons, supra; Bowman* v. *Chapman,* 179 *Ga.* 49 (4) (175 S. E. 241) ; *Gray* v. *Fed-*

*eral Land Bank of Columbia,* 182 *Ga.* 894 (187 S. E. 104) ; *Cooper* v. *Peevy,* 185 *Ga.* 805 (196 S. E. 705).

■ So far as the petition may allege duress, intimidation, inquisition, extortion, and other unlawful acts in relation to other citizens, with consequent injury to them and general exodus of people and capital, the plaintiff has no standing in court in the present action. Let those directly affected speak for themselves, if they desire to do so, offering to do equity so far as may be required by the circumstances. The plaintiff as an individual can not speak for them.' *Picquet* v. *Augusta,* 64 *Ga.* 254; *Reid* v. *Eatonton,* 80 *Ga.* 755 (6 S. E. 602). If the defendants in this respect have created a public nuisance, the State through its proper officers would be the party to sue. The same is true as to the illegal practice of law by Armistead, as related to other citizens or the general public. Code, § 72-202; *American Legion* v. *Miller,* 183 *Ga.* 754 (189 S. E. 837).

■ In no view of the case did the petition state a cause of action. The court properly sustained the general demurrer and dismissed the suit. *Judgment affirmed. All the Justices concur.*